Turley, J.
delivered the opinion of the court.
This is an action on the case, brought by the plaintiff against the defendant, to recover damages for the use and *534 occupation of a wharf on the Cumberland river, and the following facts are agreed upon as constituting the ground upon which this recovery is asked.
Nathaniel A. McNairy and wife were seized in fee of the land, upon which the wharf is erected, which they, by a deed of bargain and sale, duly executed and recorded, did, on the 18th day of March, in the year 1834, convey In fee simple to Robert Baxter, Edward D. Hicks, and Henry Ewing, with all and singular, the rights, profits, privileges, hereditaments, and appurtenances belonging to the same. At the same time Robert Baxter, Edward D. Hicks, and Henry Ewing executed a bond to the said Nathaniel A. McNairy, in a penalty of one thousand dollars upon conditions in the. words and figures following, viz:
“ The conditions of the above obligation are such, that whereas the said Baxter, Hicks, and Ewing have this day covenanted and agreed to and with the said Nathaniel A. McNairy, that they will not permit any raft, boat, or other water craft whatever to land on their ground, or at any wharf which they may construct on their ground, except such as are laden for their benefit, or purchased for their use, or loaded or unloaded on their account, or with materials in which they are interested, and that if .any other person shall land on said Baxter, Hicks, and Ewing’s ground, said McNairy shall be entitled to the wharfage, and that they will be subject to the usual rates of landing water crafts at the mouth of the tanyard branch, or up it on their line and said McNairy’s, so as not to exclusively occupy the same, and that they will not prevent the owners of boats or rafts from fastening to the ground this day conveyed by said McNairy and wife to said Baxter, Hicks, and Ewing, up the river bank above the point in the eddy; provided, the owners of said boats *535 and rafts do not injure, destroy, or interfere with the use of said ground by said Baxter, Hicks, and Ewing. The object of this agreement is, that said Baxter, Hicks, and Ewing may use their ground and wharf for their own use, benefit, and accommodation, but shall not interfere with said McNairy’s wharf, by erecting a public or private wharf for the purpose of purchasing the contents of rafts, boats, or other craft for speculation, except such as are necessary to carry on the manufactory now about to be established by the said Baxter, Hicks, and Ewing.”
This covenant was registered in Davidson county on the 11th day of April, 1838. On the 31st day of May, 1844, Baxter, Hicks, and Ewing conveyed in fee simple all the property held by them under the aforesaid deed of McNairy and wife to Anthony Vanlier, and defendant, Albert G. Payne, claiming under Vanlier, took possession of the said wharf, and occupied the samé to the exclusion of the plaintiff McNairy, for the space of eighteen months, the same being of the monthly value of six dollars and twenty-five cents.
The manufactory mentioned in the covenant has been long since discontinued, and the fixtures thereof removed, and the defendant did not use the wharf beiore or since this action was commenced for any purpose connected with said manufactory, but for his own private purposes, paying rent to the said Vanlier therefor. And it is agreed that if, upon these facts, the law is with the plaintiff, and’ he is the owner of the wharf, and Vanlier, as the assignee of Baxter, Hicks, and Ewing, is only entitled to an easement therein, for the use of said manufactory, or if the plaintiff is entitled to the joint use of the wharf with Vanlier, and Vanlier is particular owner, with the right to use, for his own purposes, but not otherwise, then judg *536 ment is to be entered upon the first supposition, for one hundred and twelve dollars and fifty cents, and on the second for one hundred dollars' in favor of the plaintiff, and if the law is with the defendant upon these facts, then judgment is to be entered for him.
Upon this statement of facts, it becomes necessary for us now to declare what are the rights of these contending parties, under the legal -construction of the deed of bargain and sale from McNairy and wife to Baxter, Hicks, and Ewing, executed on the 18th day of March, 1844, and the deed of covenant executed by Baxter, Hicks, and Ewing to Nathaniel A. McNairy at the same time.
There is really no difficulty in giving the, legal construction of these instruments. The deed of bargain and sale conveyed to the vendees the land with all its hereditaments, corporeal and incorporeal, embracing the right to the use of the wharf, which, is the subject matter of this controversy, without restriction and without reservation on the part of the vendors. The deed of covenant is a personal one, not touching the land, and of no obligatory force upon any one except the obli-gors, Baxter, Hicks, and Ewing, and their personal representatives, and creates no charge upon Anthony Vanlier, the vendee of the premises, from Baxter, Hicks, and Ewing.
We think it will not be difficult, by a few arguments to demonstrate these propositions. That there is no reservation of any right of wharfage on the part of the vendors in the deed will not be controverted, and that the deed of covenant creates no such reservation is, to our minds, equally obvious.
Preliminary to the general diseussion of this question, it is to be observed that the deed of bargain and sale is *537 executed by Nathaniel A. McNairy and wife, the land being of the estate of his wife; and the covenant is executed to Nathaniel A. McNairy alone, and for his sole benefit. If it had been designed that the reservation of the right to use the wharf as an easement out of the land sold, was to be retained for all purposes except those specified in the deed of covenant as pertaining to the vendees in the deed, it would seem that this reservation should have been in the name of and for the benefit of both husband and wife, and not to the exclusion of the wife. But we do not think that there is any thing conclusive in this, for it is unquestionable, that after the sale to Baxter, Hicks, and Ewing, McNairy might have bargained with them in his own individual right for this covenant, and this circumstance is only alluded to, from the fact, that the deed of bargain and sale, and the deed of covenant constituted one transaction, having been made and entered into at the same time; and as evidence worthy of consideration, tending to show that if the design had been to create by the deed of covenant a reservation of this easement, it would have been created in the name of both the husband and wife..
The easement claimed by the plaintiff in this land, is an incorporeal hereditament — it is the right to enter upon the premises and have and receive all wharfage, legally demandable from all other persons using the wharf, except Baxter, Hicks, and Ewing, and diminishes their right in the use of the wharf sold to them to a mere right of receiving such things as might be necessary for carrying on the contemplated manufactory, and sending off the articles manufactured.
If such had been the design, the sensible and rational mode of affecting it, would have been to have granted *538 this right of way to Baxter, Hicks, and Ewing, and retained the legal title for all other purposes. Baxter, Hicks, and Ewing would then have been entitled to this easement or incorporeal hereditament, and McNairy and wife to the corporeal hereditament, with all other incorporeal heredit-aments thereto belonging. But the deed of conveyance, without reservation, has shifted the position of these parties, and' it is Baxter, Hicks, and Ewing who' have obtained the corporeal hereditament and to McNairy is left the incorporeal. Now it is a well settled principle of law, that an incorporeal hereditament is a legal estate in land, which may pass by descent and by devise and by sale •, it, therefore, must be created in a legal manner; that is, by grant.
“ Grants, concessiones; the regular method by the common law of transferring the property of incorporeal heredita-ments, or such things whereof no livery can be had. For which reason all corporeal hereditaments, as lands and houses are said to lie in livery, and ihq others as advowsono, commons, rents, reversions, &c., to lie in grant. And the reason is given by Bracton; ‘ traditio (or livery) nihil aliud est, quam rei corporalis de persona in personam da manu in manum translaiio aut in possessionem inductio; sed res incorporales, quae sunt ipsum jus rei vel corpori inhaerens, traditionem non patiuniur,” These pass, therefore, merely by the delivery of the deed. And signiores in or reversions of land, such grants, together with the attornment of the tenant, (while attornments were necessary) were held to be of equal notoriety with, and therefore equivalent to a feoffment, and livery of lands in immediate possession.
It, therefore, differs but little from a feoffment, except in its subject matter, for the operative words therein *539 commonly used, are dedi et concessi, have given and granted.” Blade. Com., Grant, 2d vol., Chitty’s ed., 317.
It is thus shown, that to convey an incorporeal heredit-ament a grant is necessary; and that this grant must contain operative words, that is, words sufficient to convey the estate, and that those commonly used are dedi et concessi; the operative words of a deed of feoffment, or of bargain and sale.
Incorporeal hereditaments, not passing by livery and seisin, but by grant, the delivery of which comes in the place of livery and seisin, it necessarily follows that such hereditaments could never pass by parol even before the statute of Charles the 2d, the statute of frauds and perjuries, but only by a grant in writing sealed by the party making it, and containing words apt an'd proper to pass the estate intended by the grant. And want of sufficient operative words to convey the hereditament whether it be corporeal or incorporeal, invalidates the deed in the one case and the grant in the other. This view of the case is conclusive upon the rights of the parties.
The interest claimed by the plaintiff, in the premises, in dispute, is an incorporeal hereditament, if it be anything, and we look in vain in the deed of covenant for 'operative words to convey it; there are none such. Here we might safely rest this case. But we think proper further to confirm our view of this covenant, on the part of Hicks, Baxter, and Ewing being a personal one, not touching the land sold and conveyed to them, to examine its form and nature, and the objects intended to be secured by it.
Then, in the first place, it is a covenant in the usual form, by which the covenantors acknowledge themselves to be held and firmly bound unto Nathaniel A. McNairy in the sum of one thousand dollars, for the payment of *540 which, they bind themselves, their heirs, executors, and administrators.
2. The covenant is to be void upon conditions. What are these conditions? That they will not permit any raft, boat, or other water craft whatever to land on their ground, or at any wharf which they may construct on their ground, except such as are laden for their benefit, owned by them, or purchased for their use, or loaded or unloaded on their account, or with materials in which they are interested, and that if any other persons should land on said Baxter’s, Hicks’, and Ewing’s land, said McNairy shall be entitled to wharfage, and that they will be subject to the usual rates of landing water crafts at the mouth of the tanyard branch, or up it on their line and said McNairy’s and that they will not prevent owners of boats or rafts from fastening to the ground, this day conveyed to them by McNairy and wife upon the river bank, provided the owners of said boats or rafts do not injure, destroy, or interfere with the use of said Baxter, Hicks, and Ewing. The object of this agreement being, that Baxter, Hicks, and Ewing may use their ground and wharf, for their own use and benefit and accommodation, but still shall not interfere with said McNairy’s wharf, by erecting a public or private wharf, for the purpose of receiving wharfage on any part of this ground, for the purpose of purchasing the contents of rafts, boats, or other water craft for speculation, except such as are necessary to carry on the manufactory now about to be erected by said Baxter, Hicks, and Ewing.
These conditions are somewhat loosely and obscurely worded, but we readily gather from them that the object of Baxter, Hicks, and Ewing, in buying from McNairy and wife the land upon which is constructed the wharf, *541 the subject matter of this controversy, were mainly, if not exclusively induced by the desire of having a suitable wharf for the convenience of the iron manufactory, they were about to establish; that they had no object or desire to become general wharfingers; that McNairy owned a wharf or a piece of land, adjoining the land sold by himself and wife to Baxter, Hicks, and Ewing; that he was fearful they might erect a wharf on the land, sold to-him and become general wharfingers, to the great detriment of his wharfing business, as previously carried on by him; and that he was desirous of having security against this, and that they were willing to give it to him, which they did in the shape of this bond, by which they bound themselves in the penalty of one thousand dollars not to do any thing themselves, or to prevent others from doing any thing at the wharf which they were about to establish for their own private use, which might injrrre his business as a general wharfinger at his previously erected wharf.
With this security he was contented and did not ask for any interest or estate in the land corporeal or incorporeal, as the means of making it more perfect. He was satisfied with the personal liability of Baxter, Hicks, and Ewing.
If they violated the condition or conditions of their covenant, what was plaintiff’s remedy! An entry upon the land and seizure of the wharf; an action on its ease for the use and occupation, which implies a right to its possession ? Surely not. But only . an action of covenant upon the penalty of the bond as in other cases of personal covenants with conditions.
Then, from this view of the case, it clearly follows, that Vanlier, the' vendee of this wharf, from Baxter, Hicks, and Ewing by a deed of bargain and sale in fee simple, *542 is in no way affected by this covenant of Baxter, Hicks, and Ewing, and that it constitutes no let or hindrance to his enjoyment of his estate in the premises to the fullest extent that his title in fee gives, and that his lessee, Albert G. Payne, is not liable to this action.
Judgment will, therefore, be entered upon the case agreed for the defendant for cost.